STATE OF LOUISIANA v. GARFIELD, SECRETARY OF THE INTERIOR.

ORIGINAL IN EQUITY.

No. 7. Argued October 27, 28, 1908.—Decided November 9, 1908.

This court has no jurisdiction of an action brought by a State against the Secretary of the Interior to establish title to, and prevent other disposition of, lands claimed under swamp land grants where questions of law and fact exist as to whether the United States still owns the lands. The United States is a necessary party, and the action cannot be tried without it.

THE facts are stated in the opinion of the court.

*The Attorney General* and *The Solicitor General*, with whom *Mr. Glenn E. Husted* was on the brief, for defendants, on demurrer:

The United States is the real party in interest as defendant, and as it has not consented to be sued, and cannot be sued without its consent, the bill must be dismissed. *Minnesota* v. *Hitchcock*, 185 U. S. 373; *Oregon* v. *Hitchcock*, 202 U. S. 60; *Naganab* v. *Hitchcock*, 202 U. S. 473; *Kansas* v. *United States*, 204 U. S. 331.

The point determined by the Secretary of the Interior in 1895 was not a matter of fact and merely quasi-jurisdictional as in *Noble* v. *Union River Logging Co.*, 147 U. S. 164, 173, but was a question of law and strictly jurisdictional expressly within the classification of that case, which included the instance where "the Land Department issues a patent for land

which has already been reserved or granted to another person." The act then is not voidable merely but void. This was the character of the Secretary's action, involving a manifest mistake of law.

Even if the court had jurisdiction the suit must fail because these military reservation lands were not intended to be and were not covered by the swamp land grant. Such grants are to be interpreted most strongly in favor of the Government, and nothing passes but what is clearly included within the terms of the grant. *Rice* v. *Railroad Co.*, 1 Black, 358; *Wilcox* v. *Jackson*, 13 Pet. 498; *Leavenworth &c. R. R.* v. *United States*, 92 U. S. 733; *Newhall* v. *Sanger*, 92 U. S. 761; *United States* v. *Michigan*, 190 U. S. 379. Congress could not have intended to grant to the State any interest as of the date of this swamp land act in lands then reserved and occupied for military purposes, and the act of February 24, 1871, 16 Stat. 430, transferring the Fort Sabine military reservation to the Interior Department shows that it was not the understanding of Congress that the grant applied to the reservation lands.

Furthermore, the approval by the Secretary of the Interior of the Surveyor General's certified list of swamp lands under the act of 1849, as amended by the act of 1850, connects and merges the special act of 1849 with the general act of 1850, and therefore this approval was merely an additional step and a patent as provided under the act of 1850 was necessary. No such patent has been issued and under the later act the legal title passes only upon delivery of the patent. *Brown* v. *Hitchcock*, 173 U. S. 473. This is not a case for the application of the rule that a posterior general act does not repeal a prior special provision unless the legislative intent to repeal be apparent. *People* v. *Jaehne*, 103 U. S. 182. The act of 1850 is to be regarded as the final expression of the legislature on swamp land grants; the requirements and method of conveyance of that act take the place of the special law and must be taken as substituted for the special law. *Morris* v. *Crocker*,

13 How. 429; *United States* v. *Tynen,* 11 Wall. 88; *Murdock* v. *City of Memphis,* 20 Wall. 590. This is also the conclusion to be drawn from the Revised Statutes, because the act of 1850 is the code there, and while some special swamp land provisions as to other States are preserved, this is not the case as to Louisiana.

The State by the action of its officers has apparently considered that a patent was necessary. After approval by the Secretary of the Interior in 1895, the register of the state land office, assuming to act under authority of an act of the state legislature, protested against the *patenting* of the lands embraced in the approved list as not described in accordance with the latest approved survey thereof, and sought to correct the description before the patent was to be issued. 33 Land Dec. 16. And again, the State of Louisiana instituted proceedings in the Court of Claims to recover money alleged to be due under the act of March 2, 1855, 10 Stat. 634, which provided for the patenting of lands to persons who prior to the issuance of patents to the States under the act of 1850 had located upon swamp lands, and for the payment to the States of the purchase money as indemnity.

Even if an actual patent was not necessary under the act of 1850, something more than bare approval was required. See act of August 3, 1854, now § 2449, Rev. Stat., providing for lists being *certified* by the Commissioner of the General Land Office. In this case there was no such list, and since the Secretary's mere approval was not given until long after the act of 1854 was passed, it was within the power of Congress to provide a different means of administering the grant as to land not already approved.

*Mr. George H. Lamar* and *Mr. Harvey M. Friend* for complainant, on demurrer:

According to the theory of the present bill, the title to the lands here in controversy has by conveyance not only passed out of the United States into the State of Louisiana, but by

reason of a certain congressional statute of limitation and repose the title so conveyed is no longer subject to attack or suit by or on behalf of the Federal Government, and, therefore, the United States is not, and cannot be made, the real party defendant, for the all-sufficient reason that the United States has no present, prospective or ultimate interest in the land whatsoever. If, therefore, the court shall find that the legal title to the lands in dispute has passed out of the United States into the State of Louisiana, then there cannot be any doubt of the jurisdiction of this court to entertain the suit.

The cases cited by the counsel for the defendants in support of the demurrer herein do not sustain the contention that this suit cannot be maintained because it is in effect a suit against the United States, which has not consented to be sued. *Minnesota* v. *Hitchcock*, 185 U. S. 373; *Oregon* v. *Hitchcock*, 202 U. S. 60; *Naganab* v. *Hitchcock*, 202 U. S. 473; and *Kansas* v. *United States*, 204 U. S. 331, discussed and distinguished.

The Secretary of the Interior and the Commissioner of the General Land Office are but creatures of the law, and mere agencies created by the law to carry it into practical operation, and neither of them should be permitted to exert his agency in violating the law and the Constitution and then claim exemption from the process of the court, whose duty it is to guard against abuses, on the ground that they are executive officers of the Government and cannot be restrained from violating the law. *Marbury* v. *Madison*, 1 Cranch, 137; *Noble* v. *Union River Logging Co.*, 147 U. S. 165, and cases cited.

This court has pointed out in numerous opinions that similar suits to enjoin an executive officer from executing an unconstitutional statute, or where such officer has been proceeded against on the ground that he is acting or assuming to act beyond the scope of his authority, were not against the State, but were against its officers who were assuming to act under an unconstitutional statute or were assuming to act *ultra vires* to the great and irreparable injury and damage of the com-

plainants in their property rights. *Osborn* v. *Bank of United States*, 9 Wheat. 738; *Davis* v. *Gray*, 16 Wall. 220; *Board of Liquidation* v. *McComb*, 92 U. S. 531; *Poindexter* v. *Greenhow*, 114 U. S. 270; *Allen* v. *Baltimore & Ohio R. R. Co.*, 114 U. S. 311 (these last two being known as the *Virginia Coupon cases*); *Pennoyer* v. *McConnaughy*, 140 U. S. 1; *Stanley* v. *Schwalby*, 147 U. S. 508; *Tindal* v. *Wesley*, 167 U. S. 204; *Scott* v. *Donald*, 169 U. S. 58, 107; *Smyth* v. *Ames*, 169 U. S. 466; *Prout* v. *Starr*, 188 U. S. 537; *Ex parte Young*, 209 U. S. 123, and cases cited and referred to in the opinions in those cases.

Under many authorities, this court can entertain this suit under its original jurisdiction. *United States* v. *Texas*, 143 U. S. 621, 644; *Wisconsin* v. *Pelican Insurance Co.*, 127 U. S. 265, 287; *Minnesota* v. *Hitchcock*, 185 U. S. 373, 388; *Pennsylvania* v. *Wheeling Bridge Co.*, 13 How. 518, 560; *Mississippi* v. *Johnson*, 4 Wall. 475, 501; *Texas* v. *White*, 7 Wall. 700, 719; *Pennsylvania* v. *Quicksilver Co.*, 10 Wall. 553, 556; *Florida* v. *Anderson*, 91 U. S. 667.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill brought in this court to establish the title of the State of Louisiana to certain swamp lands which it claims under the statutes of the United States, and to enjoin the defendants against carrying out an order making a different disposition of the lands. The defendants demur on the grounds that this really is a suit against the United States, which has not consented to be sued, that the title never has passed from the United States, and that the remedy, if any, would be at law.

The act of March 2, 1849, c. 87, 9 Stat. 352, purported to grant to the State of Louisiana the whole of the swamp and overflowed lands therein, and provided that on approval of a list of such lands by the Secretary of the Treasury (afterwards succeeded by the Secretary of the Interior) the fee simple to the same should vest in the State. Certain lands were ex-

cluded, but those in dispute were not by any express words. They belonged, however, to the Fort Sabine Military Reservation, established by the President on December 20, 1838, and although included in a list submitted under the statute, approval of the inclusion was suspended or denied. On March 25, 1871, the Fort Sabine Military Reservation was abandoned by executive order, in pursuance of the act of February 24, 1871, c. 68, 16 Stat. 430, which authorized the Secretary of War to transfer it to the control of the Secretary of the Interior, to be sold for cash. On October 31, 1895, the Secretary of the Interior decided that the land was included in the grant of the act of 1849, subject to the right of the United States to use it for military purposes until abandoned. On December 10, 1895, pursuant to his decision, the Secretary indorsed upon a list of these lands that it was "Approved to the State of Louisiana under the Act of Congress of March 2, 1849, as supplemented and enlarged by the Act of Congress of September 28, 1850, subject to any valid adverse rights that may exist." The plaintiff says that thereupon the title passed.

On June 6, 1904, the Secretary of the Interior ordered that his predecessor's approval of the list be vacated, and that the lands should be held for disposition as provided by law, on the ground that they were not within the grant of the act of 1849, because at that time embraced in a military reservation. This decision has been upheld and finally affirmed by the present Secretary, the defendant in this case, and the result is the bringing of this bill.

We will assume for purposes of decision that if the United States clearly had no title to the land in controversy we should have jurisdiction to entertain this suit; for we are of opinion that even on that assumption the bill must be dismissed. But before giving the reasons for our opinion the course taken by the argument for the United States makes it proper to state a portion of that argument that does not command our assent.

The next year after the act of 1849 another act was passed,

which granted swamp lands to the State of Arkansas. It provided for a list, required the Secretary of the Interior to issue a patent for the lands at the request of the Governor, and then enacted that "on that patent" the fee simple to the lands should vest in the State. The fourth section was more general: "That the provisions of this act be extended to, and their benefits be conferred upon, each of the other States of the Union in which such swamp and overflowed lands, known as [sic] designated as aforesaid, may be situated." Act of September 28, 1850, c. 84, 9 Stat. 519. It is argued that this so far repealed the special act of 1849 that thereafter the title would not pass on simple approval as provided therein, but a patent was necessary. As we understand, the continuous construction of the Department has been to the contrary, and a great number of titles to a very large amount of land would be disturbed if we should accede to this argument. We see no reason for overthrowing the long continued understanding that the special provisions for Louisiana were not affected by a general clause, evidently intended to extend benefits to States that did not enjoy them at the time, not to change the mode of conveyance previously established in a case where the benefit already had been conferred. We may add that we assume that, if approval was sufficient to pass the title, the form of words used by the Secretary of the Interior on December 10, 1895, had that effect, notwithstanding the reference to the act of 1850, whatever may have been his understanding or intent.

A further argument was presented that if a patent was not necessary under the act of 1850, then a certificate by the Land Commissioner was made so by the act of August 3, 1854, c. 201, 10 Stat. 346, Rev. Stat. § 2449. But that law does not require so extended an application. We shall assume for purposes of decision that it is satisfied if confined according to its words to lands to which the act of 1849 did not purport "to convey the fee-simple title."

Leaving the foregoing arguments on one side we neverthe-

less are of opinion that the bill must fail. The land in controversy had been withdrawn from the public domain by reservation at the time when the act of 1849 was passed, and the general words of that act must be read as subject to an implied exception, under the rule laid down in *Scott* v. *Carew*, 196 U. S. 100, 109, and the earlier cases there cited. The case is not one where the approval proceeded upon a mistake of fact with regard to a matter on which it was necessary that the Secretary should pass. See *Noble* v. *Union River Logging R. R. Co.*, 147 U. S. 165, 173, 174. The approval proceeded upon a manifest mistake of law; that upon the abandonment of the military reservation the land fell within the terms of the grant of 1849. Therefore it was void upon its face. The only doubt is raised by the statute limiting suits by the United States to vacate patents to five years. Act of March 3, 1891, c. 561, § 8, 26 Stat. 1099. It may be that this act applies to approvals when they are given the effect of patents as well as to patents, which alone are named. In *United States* v. *Chandler-Dunbar Water Power Co.*, 209 U. S. 447, it was decided that this act applied to patents even if void because of a previous reservation of the land, and it was said that the statute not merely took away the remedy but validated the patent. The doubt is whether Louisiana has not now a good title by the lapse of five years since the approval and by the operation of that act.

But that doubt cannot be resolved in this case. It raises questions of law and of fact upon which the United States would have to be heard. The United States fairly might argue that the statute of limitations was confined to patents, or was excluded by the act of 1871. If it yielded those points it still reasonably might maintain that a title could not be acquired under the statute by a mere void approval on paper, if the United States ever since had been in possession claiming title, as it claimed it earlier by the act of 1871. It might argue that, for equitable relief on the ground of title in the plaintiff, in the teeth of the last named act, it would be necessary at

least to allege that the State took and has held possession under the void grant. The United States might and undoubtedly would deny the fact of such possession, and that fact cannot be tried behind its back. It follows that the United States is a necessary party and that we have no jurisdiction of this suit.

*Bill dismissed.*