**YOUNG v. ANDERSON, Secretary of Agriculture, et al.**

No. 9292.

United States Court of Appeals District of Columbia.

Argued Nov. 20, 1946.

Decided Jan. 6, 1947.

Writ of Certiorari Denied May 12, 1947.

See 67 S.Ct. 1316.

Mr. Robert M. Rieser, of Madison, Wis., *pro hac vice,* by special leave of court, and Mr. John Wattawa, of Washington, D. C., for appellant.

Mr. Frederick W. Smith, Attorney, Department of Justice, of Washington, D. C., with whom Mr. Roger P. Marquis, Attorney, Department of Justice, of Washington, D. C., was on the brief, for appellees.

Before GRONER, Chief Justice, and CLARK and PRETTYMAN, Associate Justices.

GRONER, C. J.

The case is here on an appeal from an order dismissing appellant's complaint. The dismissal was on the ground that the action is a suit against the United States, which have not consented to be sued. The proceeding was begun June 28, 1945, by Alice Martens Young, a citizen of Wisconsin, in her own right and in behalf of all other persons who were also stockholders in Miss-Wis Timber and Land Company (dissolved), a Wisconsin corporation. Stated shortly, the complaint shows that Congress in March, 1911, passed the Weeks Act,[1] under which the Secretary of Agriculture is authorized to locate and acquire, upon the recommendation of the National Forest Reservation Commission, cut-over or denuded lands within watersheds of navigable streams in aid of navigation, or in promoting the growth of timber. Before acquisition, the Act requires the consent of the legislature of the state wherein the land is located. Appellant's complaint says that in 1934 the Secretary decided to acquire, under provisions of the Act, lands in Mississippi owned by appellant and Miss-Wis Timber and Land Company, and notified

---

[1] 36 Stat. 962, 16 U.S.C.A. § 513.

appellant and the corporation that if no agreement of sale were made, condemnation would be begun to acquire the lands; that the parties thereupon executed options to the United States at agreed prices, reserving (as the Act permitted) all mineral rights appertaining to the property for a period of ten years. As a result of these options the United States acquired by purchase and condemnation some 17,000 acres of land from the corporation and some 1500 acres from appellant, and paid therefor to appellant and the corporation the agreed or ascertained consideration of some $60,000 to the latter and about $5,000 to the former, and thereupon went into possession and have ever since occupied, used and controlled the lands. The object of the complaint is to annul the transaction and restore title and possession to appellant and the corporation, first, on the ground that the Weeks Act is unconstitutional, for the reason that the United States are incapable of taking and holding lands in one of the states which are not acquired as incident to the control of navigation or for a specific purpose named in Section 8(17) of the Constitution;[2] and second, that the consent of the Mississippi Legislature never having been obtained, no title passed nor could pass, constitutionally, to the United States.

Filed with the complaint, as part thereof, were copies of the deeds of conveyance made by the Lumber Company to the United States, copies of the condemnation judgments and a copy of Section 6058 of the Mississippi Code of 1930, wherein that State consents to the acquisition by the United States by purchase or gift of such land in Mississippi, as in the opinion of the Federal Government and the State Forestry Commission may be needed for the establishment of a national forest or forests or reclamation or colonization projects, but in which Act there is no requirement that the acquisition be in aid of commerce and navigation.

We have set out the position of appellant at length only because all of the several grounds on which her claim is based have been earnestly urged in the argument. But we are in agreement with the court below that since the action is clearly one against the United States, it was properly dismissed. Appellant, however, insists that the charge that the Weeks Act is unconstitutional goes to the very marrow of the case and should be decided before we reach the question whether the United States are indispensable parties. But we think the rule is definitely established otherwise, for the Supreme Court has said in Siler v. Louisville & Nashville R. Co., 1909, 213 U.S. 175, 193, 29 S.Ct. 451, 53 L.Ed. 753, that courts will not usually pass upon a constitutional question, although properly presented, if there is also present,—as is certainly true here,—some other ground upon which the case may be disposed of. And to this we properly may add the equally well established rule that neither will courts pass upon the constitutionality of a statute at the instance of one who has availed himself of its benefits.[3] And that this is true of appellant her complaint shows beyond any question, for both she and the corporation dealt with the United States without protest, and received and for more than ten years have retained the proceeds of their bargain. But even if the two rules we have referred to were otherwise, we think we may say, in passing, that appellant's position as to the unconstitutionality of the Weeks Act would have to be overruled, for appellant's main contention raises a question that has been too long and too thoroughly settled now to justify discussion. In Coggeshall v. United States,[4] one of the points raised was that the Government had no right to condemn lands for forest reservations where no question of the protection of navigable streams was involved. The Fourth Circuit Court of Appeals there stated that this contention

[2] U.S.Const. art. I, § 8(17), which gives the Congress authority over "* * * all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings;"

[3] Ashwander v. Tennessee Valley Authority, 1936, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (Opinion of Brandeis, J., concurring).

[4] 1938, 4 Cir., 95 F.2d 986, 989. See also United States v. Griffin, D.C.W.D. Va.1932, 58 F.2d 674, and United States v. Graham & Irvine, D.C.W.D.Va.1917, 250 F. 499.

could not be sustained. We think this is correct, for the statute has been in force nearly forty years, and under its provisions the United States have acquired title to thousands of acres of lands for the different national forests, and, so far as we are able to determine, no court has ever questioned its constitutionality, and Congress has for years appropriated and legislated generally on the subject. The allegation that Mississippi has not given its consent is negatived by the statute of that State which appellant includes as a part of her complaint. Its terms are even broader than Congress has required, and certainly appellant may not complain of this.

Accordingly, we pass to the question on which, as we have said, the case must be decided. Appellant's action is against the Secretary of Agriculture and sundry of his subordinates, all in their official capacities. The relief prayed is that the court enjoin the Secretary and his subordinates from taking any steps to lease the lands in question, or to exercise any acts of ownership therein; that the Secretary, upon repayment by appellant of the purchase price, be ordered to quitclaim the lands to appellant and the dissolved corporation, or, in the alternative, that the court adjudge that title did not pass under the deeds of conveyance, or under the judgments in condemnation, and ultimately to hold that appellant and the corporation are legal owners of the lands, and entitled to an accounting from the United States of the use of the lands; that the Secretary and other codefendants be required to deliver up for cancellation the title deeds and to cooperate in correcting the record in the condemnation proceedings so that title to the lands shall be restored to appellant and the corporation. Appellant supports her demands in these respects principally on the basis of the doctrine announced by the Supreme Court in United States v. Lee, 1882, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171.

That celebrated case, as later described by Mr. Justice Miller,[5] was an action in ejectment, and in its essential character an action of trespass with power in the court to restore the possession to the plaintiff as part of the judgment. The defendants, two Army officers, set up their right of possession as officers of the United States, which the Supreme Court held to be unlawful—as it undoubtedly was—and therefore insufficient as a defense. Mr. Justice Miller further observes that the case did not " * * * conclude the United States, as the opinion carefully stated, but held the officers liable as unauthorized trespassers, and turned them out of their unlawful possession." That the result in that case was fair, just and right, we have no manner of doubt, but that the facts in that case and this are vitally different is convincingly apparent, for it is obvious that in no sense can the United States or their officers be described as trespassers in the present case. Here, the United States are in possession as holders of the record title through the voluntary acts of appellant and the corporation. The unlawful possession, as appellant claims, is solely that the United States were without constitutional power to take title. But appellant has no greater right to challenge the transaction on that ground than a stranger. She relinquished her rights ten years ago, Alabama Power Co. v. Ickes, 1938, 302 U.S. 464, 479, 58 S.Ct. 300, 82 L.Ed. 374. But we think we need not rely on that principle, nor stop to weigh the factual differences between the Lee case and this, since we also think it is perfectly clear that whatever now remains of the doctrine in the Lee case has no applicability to the case at hand, for the rule in that case which appellant seeks to apply in this,—even on a state of facts more nearly akin to those in the Lee case—must, in the light of later decisions of the Supreme Court, be considered as no longer controlling. See Morrison v. Work, 1925, 266 U.S. 481, 45 S.Ct. 149, 69 L.Ed. 394; State of New Mexico v. Lane, 1917, 243 U.S. 52, 37 S.Ct. 348, 61 L.Ed. 588; State of Louisiana v. Garfield, 1908, 211 U.S. 70, 29 S.Ct. 31, 53 L.Ed. 92; Naganab v. Hitchcock, 1906, 202 U.S. 473, 26 S.Ct. 667, 50 L.Ed. 1113.

In State of Louisiana v. Garfield, the State instituted a suit against the Secretary of Interior to establish title to swamp lands in the possession of the United States and

---

[5] Cunningham v. Macon & Brunswick R. Co., 1883, 109 U.S. 446, 452, 3 S.Ct. 292, 297, 609, 27 L.Ed. 992.

claimed to have been granted to the State, and to enjoin the Secretary from making any other disposition of them. In holding that the United States were indispensable parties and in dismissing the bill, the Court stated:

"* * * The doubt is whether Louisiana has not now a good title by the lapse of five years since the approval and by the operation of that act.

"But that doubt cannot be resolved in this case. It raises questions of law and of fact upon which the United States would have to be heard. The United States fairly might argue that the statute of limitations was confined to patents, or was excluded by the act of 1871, [16 Stat. 430.] If it yielded those points, it still reasonably might maintain that a title could not be acquired under the statute by a mere void approval on paper, if the United States ever since had been in possession claiming title, as it claimed it earlier by the act of 1871. It might argue that, for equitable relief on the ground of title in the plaintiff, in the teeth of the last-named act, it would be necessary at least to allege that the state took and has held possession under the void grant. The United States might and undoubtedly would deny the fact of such possession, and that fact cannot be tried behind its back. It follows that the United States is a necessary party and that we have no jurisdiction of this suit." [6]

In Morrison v. Work, the Court, in a case involving claims against the United States, said:

"* * * The claim of the United States is, at least, a substantial one. To interfere with its management and disposition of the lands or the funds by enjoining its officials, would interfere with the performance of governmental functions and vitally affect interests of the United States. It is, therefore an indispensable party to this suit. It was not joined as defendant. Nor could it have been, as Congress has not consented that it be sued." [7]

It is thus apparent that the United States are indispensable parties to this action. Since they have not consented to be sued, they cannot be made parties, and therefore the action was properly dismissed.

Affirmed.

---

[6] 1908, 211 U.S. 70, 77, 78, 29 S.Ct. 31, 33, 53 L.Ed. 92.

[7] 1925, 266 U.S. 481, 485–486, 45 S.Ct. 149, 151, 69 L.Ed. 394.